IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CITY OF GUYMON, A Municipal Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-04-457-BA |
| CAL FARLEY'S BOYS RANCH and CAL FARLEY'S BOYS RANCH FOUNDATION, | ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER

The City of Guymon seeks to exercise its power of eminent domain over surface and water rights associated with a parcel of land owned by the Defendants. The Defendants filed three "exceptions" to the commissioners' report. In part, the exceptions address whether the taking is for a public purpose. The Plaintiff moves for summary judgment on this issue, and the Court grants the motion.[1]

I.      STANDARD FOR SUMMARY JUDGMENT

Summary judgment is necessary when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

---

[1]      This ruling does not address: (1) parts of the Defendants' second exception to the commissioners' report unrelated to the existence of a public purpose; or (2) any of the Defendants' third exception.

as a matter of law." Fed. R. Civ. P. 56(c).  The Court makes this determination by viewing

the evidence in the light most favorable to the non-movant.  *See*, *e.g.*, *Faustin v. City*, 423

F.3d 1192, 1198 (10th Cir. 2005).  But when only one reasonable outcome exists, summary

judgment is necessary.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

II.     THE PROPOSED TAKING INVOLVES A PUBLIC USE UNDER THE STATE
        AND FEDERAL CONSTITUTIONS

        The state and federal constitutions authorize takings for a public use or purpose.  U.S.

Const. amend. V; Okla. Const. art. 2 § 24.[2]  The undisputed evidence reflects a public

purpose for the taking, entitling the Plaintiff to summary judgment.

        A.      The State Constitution

The proposed taking involves a public use for purposes of the Oklahoma Constitution.

---

[2]      Oklahoma has multiple laws which specifically authorize a municipal taking for expansion
of the water supply.  *E.g.*, Okla. Stat. tit. 11, § 22-104(3) (2001) (municipality's power of eminent
domain to establish and operate a pipeline); Okla. Stat. tit. 11, § 37-103(A) (2001) (municipal
governing body's power to condemn land for the construction and operation of waterworks); Okla.
Stat. tit. 11, § 37-104 (2001) (municipality's power to condemn land to build or enlarge "waterworks
and every auxiliary part thereof"); Okla. Stat. tit. 11, § 37-105 (2001) (municipality's power of
eminent domain to build or enlarge waterworks); Okla. Stat. tit. 11, § 37-117 (2001) (municipality's
power to own and operate a system of waterworks to supply the municipality).  In response to the
motion for summary judgment, the Defendants challenge the constitutionality of Okla. Stat. tit. 27,
§ 5 (2001), which authorizes municipal takings for public purposes.  *See* Defendants' Response to
Motion for Summary Judgment at p. 1 (Nov. 18, 2005) ("Defendants' Response").  The Court
declines to address this issue, as the Plaintiff's motion for summary judgment involves only the issue
of a public use or purpose.  The Plaintiff's constitutional challenge to Okla. Stat. tit. 27, § 5 (2001)
is addressed in a separate order.

<u>Standard for Determining Whether the Proposed Use is "Public"</u>

In Oklahoma, the nature of the taking presents a judicial question unless the legislature has declared that the given use is public. *See Sublett v. City*, 405 P.2d 185, 196 (Okla. 1965). The city bears the initial burden of proof to establish that the taking is necessary for public use. *See Public Service Company of Oklahoma v. Willis*, 941 P.2d 995, 999 (Okla. 1997). The condemnor may supply a *prima facie* showing through a resolution of necessity. *See id.*; *Oklahoma City v. Shadid*, 439 P.2d 190, 191 (Okla. 1966) (*per curiam*). Such evidence is conclusive in the absence of actual fraud, bad faith, or an abuse of discretion. *See Public Service Company of Oklahoma v. Willis*, 941 P.2d at 1000.

<u>The Plaintiff Has Made a *Prima Facie* Showing of a Public Purpose</u>

The City of Guymon has presented a *prima facie* showing of a public purpose involving the expansion of the water supply.[3]

The Plaintiff presents evidence that its population and corresponding water use has increased while the available water supply has decreased. Plaintiff's Motion for Summary Judgment at pp. 1-2, Ex. 1 & 3. According to a city engineer, this phenomenon has exacerbated the need for additional water. *Id.*, Ex. 3. The perceived need for additional water led the city to pass a resolution of necessity, stating that the proposed taking was necessary for public purposes, "including groundwater for municipal purposes . . . ." *Id.*, Ex.

---

[3]     The city also points to a consent decree requiring expansion of its wastewater facilities. Amended Motion for Summary Judgment and Brief in Support at p. 2 ¶ 7, Ex. 4 (Nov. 2, 2005) ("Plaintiff's Motion for Summary Judgment"). The Court need not address the city's asserted need to expand its system of wastewater disposal.

6.   This resolution constitutes a *prima facie* showing which shifts the burden to the Defendants.  *See supra* p. 3.[4]

> ### The Defendants Lack Evidence of Actual Fraud, Bad Faith, or an Abuse of Discretion

Because the Plaintiff has made a *prima facie* showing that the proposed taking is for public use, the burden shifts to the Defendants to prove actual fraud, bad faith, or an abuse of discretion.  *See supra* p. 3.  The Defendants have not presented any evidence to satisfy their burden.

According to the Defendants, the proposed taking relates solely to the increased water needs of privately-owned Seaboard Farms of Oklahoma, Inc.  Defendants' Response, *passim*.  In support, the Defendants argue: (1) There is no evidence of a population increase or a water supply decrease which would merit a need for additional water; and (2) the city's use would be incidental to Seaboard's and the declaration of public necessity is pretextual.  *Id.* at pp. 15-23.[5]  The Court rejects the arguments, concluding that the Defendants have failed to produce evidence of actual fraud, bad faith, or an abuse of discretion.

---

[4]      The use of land to collect, store and distribute water is "a use that is so manifestly public 'that it has seldom been questioned and never denied.'"  *Tuttle v. Jefferson Power & Improvement Co.*, 122 P. 1102, 1102-1103 (Okla. 1912) (citation omitted); *see also Bowles v. City*, 245 P.2d 730, 733-35 (Okla. 1952) (holding that a municipal corporation could exercise the power of eminent domain to acquire water rights for municipal purposes).

[5]      The Defendants have also questioned the Plaintiff's authority to condemn the property under the Local Development Act.  Defendants' Response at pp. 15-16.  But the Plaintiff has not relied on this statute.  *See* Plaintiff's Trial Brief at p. 13 (Dec. 1, 2005).

First, the Defendants deny the need for a taking based on a population increase.  *Id.* at pp. 3-7.  But the Defendants' own evidence reflects more people in the county over a ten-year period.  *Id.* at pp. 3-5.  The Defendants downplay the increase, stating that it was comprised primarily of Hispanic immigrants.  *Id.* at pp. 4-5.  The Defendants' point is immaterial.  Hispanic immigrants need water like anyone else, and the Defendants' evidence reflects an increase in the population, just as the Plaintiff alleges.

Second, the Defendants assert pretext, denying the need for the taking based on the city's demand for water.  *Id.* at pp. 5, 13.  But the Defendants have not presented evidence disputing the Plaintiff's claim regarding a decline in water production.

The Defendants argue that "[t]he water supply expansion is virtually identical to the Seaboard's need for additional water described in an engineering report for Seaboard before the plant opened in 1995."  *Id.* at p. 13.  A recent report by Mr. Glovier states that the city needs a new one million gallon storage tank.  *See id.*; Plaintiff's Motion for Summary Judgment, Ex. 3.  According to the Defendants, a prior engineering report indicated that such a tank would meet Seaboard's needs.  Defendants' Response at pp. 7-8, 11, 13.  Thus, the Defendants conclude that the facility currently proposed by the Plaintiff is designed to meet the needs of Seaboard, rather than the City of Guymon.  *Id.*  But the Defendants' reliance on the first engineering report does not suggest pretext.

Although the report was not dated, it obviously preceded Seaboard's opening in 1995.  *See id.* at p. 13 & Ex. 9.  Since that time, the city's evidence shows that its population has

increased while the water supply has decreased.  *See supra* pp. 3, 5.  Thus, Seaboard's needs

of ten years ago do not relate to the city's current needs.

The Oklahoma Supreme Court addressed a similar challenge in *Bilby v. District Court

of Ninth Judicial District*, 15 P.2d 38 (Okla. 1932).   There a state highway commission

sought to condemn land owned by a private individual to be used as a state highway.  *See

Bilby v. District Court of Ninth Judicial District*, 15 P.2d at 39.  The landowners opposed the

taking, arguing that the land was actually being sought to benefit the city or certain citizens.

*See id.* at 40.  The court rejected the argument and explained:

> Had plaintiffs in their answer asserted that the road purported to be constructed
> would, when completed, be used exclusively by the city of Holdenville and not
> for the public generally, then the question of public or private use would have
> properly been in issue, and they would clearly be entitled to a hearing on this
> point. But, as we understand their position, plaintiffs contend that the road is
> being promulgated or promoted by the city of Holdenville or certain citizens
> thereof, and that, when constructed, they will benefit largely thereby. This may
> be true, and yet the use to which the road is to be put is none the less public.
>
> . . . .
>
> The cross-petition of defendants in the condemnation proceedings, plaintiffs
> herein, did not allege that the proposed use was exclusively for the city of
> Holdenville or certain individuals thereof, neither did they offer proof to this
> effect. The mere fact that the city of Holdenville or the citizens thereof would
> be benefited more than the citizens of the state at large by the proposed
> highway would not render the use a private one.  If the use and benefit is to be
> in common, then it is a public and not a private use.  There is no contention
> that such is not the case.  The fact that a highway proposed to be constructed
> by the state highway commission will benefit a certain town or city or the
> citizens thereof more than more remote communities or the public at large is
> not sufficient to make it a private enterprise.  It is only where it is intended for
> the exclusive use of such city or town or some private individual or group of
> individuals that the use may be said to be private.

*Id.* at 40-41.

*Bilby v. District Court of Ninth Judicial District* is controlling on the Defendants' challenges arising under the Oklahoma Constitution.  The Plaintiff has made a *prima facie* showing of a public purpose, and the Defendants have failed to raise a genuine issue of material fact involving actual fraud, bad faith, or an abuse of discretion.  The Defendants' broad challenges are not supported by evidence, and the Court grants summary judgment to the Plaintiff on the issue of whether the taking involves a public purpose under the state constitution.

      B.    <u>The Federal Constitution</u>

The Fifth Amendment authorizes condemnation only if the taking involves a public use.  U.S. Const. Amend. V; *see Kelo v. City*, __ U.S. __, 125 S. Ct. 2655, 2661 (2005). According to the Defendants, the City of Guymon violated the Fifth Amendment by taking the property for the benefit of Seaboard rather than the public.  The Plaintiff is entitled to summary judgment on this claim.

Under the federal constitution, the Court has "an extremely narrow" role in determining whether the taking involves a public purpose.  *Berman v. Parker*, 348 U.S. 26, 32 (1954) (citations omitted).  The condemnor must initially satisfy two steps: (1) The taking must involve a legitimate use that is public in nature, and (2) the means must be rationally related to this use.  *See Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 241-43 (1984). In assessing the two elements, the Court gives considerable deference to the municipality's legislative declaration of a public use.  *See City v. Golddust Twins Realty Corp.*, 41 F.3d 960,

963-64 (5th Cir. 1994) (stating that a municipality's "exercise of the power of eminent domain is a legislative act," and the "legislative declaration of public use is entitled to considerable deference" (citations omitted)); *see also Kelo v. City*, __ U.S. __, 125 S. Ct. 2655, 2663 (2005) (discussing the "longstanding policy of deference to legislative judgments" about whether a taking serves a "'public purpose'").

The supply of water is a public use. *See* 2A J. Sackman, *Nichols on Eminent Domain* 1 § 7.06[20][a], at 7-157 (2005) ("Eminent domain may be used to take land to supply a community with water." (footnote omitted)).  The Defendants question the means by which the city is carrying out its asserted purposes.  But these questions do not create a genuine issue of material fact in light of the rational relationship between the means and the asserted purposes.

The Defendants advance two theories regarding how the proposed taking involves a private purpose for the benefit of Seaboard.

First, the Defendants contend that the city has sought to subsidize Seaboard. Defendants' Response at p. 2.  The argument assumes, without any authority, that a municipality's efforts to attract private enterprise involves a "private purpose" rather than a "public purpose."  The assumption is incorrect.  "If it is found that a new business project may create jobs, provide infrastructure, and stimulate the local economy, those are legitimate public purposes which justify the use of the power of eminent domain." *J.C. Penny Corp.*

*v. Carousel Center Co.*, 306 F. Supp. 2d 274, 280 (N.D. N.Y. 2004) (citations omitted); *see also Kelo v. City*, __ U.S. __, 125 S. Ct. 2655, 2666 (2005) ("the government's pursuit of a public purpose will often benefit individual private parties").

Second, the Defendants argue that Seaboard needs more water, but the city does not. Defendants' Response at p. 2. This argument is unsupportable. An engineer, Kevin Glovier, has studied the city's water needs and explained that additional water wells are needed to meet demand. Plaintiff's Motion for Summary Judgment, Ex. 3. The Defendants suggest flaws in the report, but none of them create a reason to question the rationality of the city's proposal to expand its water supply. *See supra* p. 7.

The issue is whether the municipality has a public purpose and has employed means rationally related to that purpose. *See supra* p. 7. Even when viewing the evidence in a light favorable to the Defendants, the Court must answer both questions affirmatively. According to the Defendants, the City of Guymon harbors a solicitude for Seaboard. But a solicitous attitude does not vitiate the public character of the city's undertaking. Its purpose is public and its means are rationally related to that purpose. Accordingly, the Court grants summary judgment to the Plaintiff on its theory that the taking involves a public use under the Fifth Amendment.

III.   SUMMARY

The Court grants the Plaintiff's summary judgment motion.

SO ORDERED this 30th day of December, 2005.


Robert E. Bacharach
United States Magistrate Judge