IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CITY OF GUYMON, A Municipal Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-04-457-BA |
| | ) | |
| CAL FARLEY'S BOYS RANCH and CAL FARLEY'S BOYS RANCH FOUNDATION, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

The Court overrules the Defendants' remaining exceptions to the commissioners' report.

The Defendants previously argued that the municipality's purpose was private rather than public. Having lost that challenge, the Defendants claim:

- unequal treatment,

- improper delegation of authority and vagueness in one of the state laws relied upon by the city, and

- violations of Okla. Stat. tit. 66, § 53, and Okla. Const. art. 2, § 2, and art. 5, § 59.

These challenges are invalid.[1]

---

[1]    Through stipulations, the Defendants' remaining challenges are before the Court as the trier of fact.

Equal Protection Claims

The Defendants characterize the taking as an equal protection violation under the federal and state constitutions.[2]  This characterization is based on a misreading of the constitutional protection against unequal treatment.

The federal and state constitutions restrict unequal treatment of similarly situated parties.[3]  As a result, the threshold issue is the identification of a favored party that is similarly situated with the Defendants.[4]  According to the Defendants, the favored party is Seaboard.  This theory is self-defeating for two reasons.

First, the Defendants' theory is premised on the uniqueness of Seaboard and its alleged importance to economic development in the city.  The Defendants do not suggest that they share either of these attributes with Seaboard.[5]

Second, the alleged favoritism would exist only if the municipality were taking the Defendants' land and water rights and giving them to Seaboard.  The city is not doing so.

---

[2]     "The same equal protection component found in the fourteenth amendment of the United States Constitution is present in the due process clause of art. 2, § 7 [of the Oklahoma constitution]." *Presley v. Board of County Commissioners*, 981 P.2d 309, 312 (Okla. 1999) (footnote omitted).

[3]     *See Crider v. Board of County Commissioners*, 246 F.3d 1285, 1288-89 (10th Cir. 2001); *see also Sawatzky v. City*, 906 P.2d 785, 786 (Okla. Crim. App. 1995) ("The right to equal protection guaranteed under Oklahoma's Constitution has consistently been interpreted as coextensive with the right to equal protection guaranteed under the federal constitution." (footnote omitted)).

[4]     *See Bartell v. Aurora Public Schools*, 263 F.3d 1143, 1149 (10th Cir. 2001).

[5]     In *Crider v. Board of County Commissioners*, landowners alleged a denial of equal protection when a city placed property in rural preservation and declined to do so for a company that owned an adjacent lot.  *Crider v. Board of County Commissioners*, 246 F.3d at 1287-88.  The Tenth Circuit Court of Appeals upheld dismissal of the claim because of the dissimilarities between the properties. *Id*.

The Court has already held, as a matter of law, that the acquisition is designed to benefit the public rather than Seaboard.  The public benefit would involve the acquisition of needed water and the creation of a water treatment facility.  In the absence of a direct conveyance to Seaboard, the Defendants cannot show inequality of treatment between similarly situated parties.

Challenges to Okla. Stat. tit. 27, § 5 (2001)

The Defendants also challenge Okla. Stat. tit. 27, § 5 (2001), on constitutional grounds.  These challenges are rejected.

I.    Claims Involving Improper Delegation of Authority

According to the Defendants, Okla. Stat. tit. 27, § 5 (2001), entails an improper delegation of authority.  This claim is invalid.  The federal and state constitutions restrict delegation from a legislative body to an agency.[6]  But the present taking was authorized by a municipality rather than a state or local agency.  Thus, the state and federal constitutions do not apply to the present taking.

---

[6]    *See Whitman v. American Trucking Associations, Inc.*, 531 U.S. 457, 472 (2001) ("In a delegation challenge, the constitutional question is whether the statute has delegated legislative power to the agency."); *Shivwits Band of Paiute Indians v. State*, 428 F.3d 966, 972 (10th Cir. 2005) ("Where, as here, a party has challenged a federal statute on the grounds that it violates the 'nondelegation doctrine,' 'the constitutional question is whether the statute has delegated legislative power to the agency.'" (citation omitted)); *In re Initiative Petition No. 366*, 46 P.3d 123, 129 (Okla. 2002) ("The non-delegation doctrine prevents the Legislature from abdicating its policy-making role by delegating its authority to an agency." (footnote omitted)).

II.     Vagueness Claims

The Defendants also challenge the taking on grounds that Okla. Stat. tit. 27, § 5 (2001), is unduly vague.  This challenge is based on a fundamental misconception about the scope of the vagueness doctrine.[7]

Ambiguity alone does not invalidate a state law.[8]  Vagueness can result in a due process violation[9] only when the statute restricts conduct or inhibits speech.[10]

---

[7]     In their reply brief, the Defendants assert that eminent domain laws had been challenged on vagueness grounds in *Berman v. Parker*, 348 U.S. 26, 35 (1954), and *Isaacs v. Oklahoma City*, 437 P.2d 229, 234-46 (Okla. 1966).   In these cases, however, the claims involved non-delegation principles, which were analytically distinct from the vagueness doctrine.  *See Berman v. Parker*, 348 U.S. at 35 (rejecting the district court's conclusion that statutory standards for the taking by a governmental agency "would not be sufficiently definite to sustain the delegation of authority" (citation omitted)); *Isaacs v. Oklahoma City*, 437 P.2d at 233-34 (relying on *Berman v. Parker* to reject a claim that a state law lacked "definite standards" in the conferral of authority upon municipal agencies for the condemnation of private property); *see also Ridley v. Massachusetts Bay Transportation Authority*, 390 F.3d 65, 94 (1st Cir. 2004) (stating that "[t]he void-for-vagueness doctrine and the excessive delegation doctrine are technically 'analytically distinct,'" although they overlapped on the facts presented (citation omitted)).  Neither *Berman* nor *Isaacs* addressed the applicability of the vagueness doctrine to a state's eminent domain laws.

[8]     *See United States v. Councilman*, 418 F.3d 67, 84 (1st Cir. 2005) (*en banc*).

[9]     "[A] void-for-vagueness challenge to a state statute involves the Fourteenth Amendment's due process clause."  *United States v. Corrow*, 119 F.3d 796, 802 n.9 (10th Cir. 1997).  The same constitutional protection is afforded under the Oklahoma Constitution.  *See Presley v. Board of County Commissioners*, 981 P.2d 309, 312 (Okla. 1999) ("Due process protections encompassed within the Okla. Const. art. 2, § 7 are coextensive with those of its federal counterpart." (footnote omitted)).

[10]     *See Nyeholt v. Secretary of Veterans Affairs*, 298 F.3d 1350, 1357 (Fed. Cir. 2002) ("a void-for-vagueness challenge must be directed to a statute or regulation that purports to define the lawfulness or unlawfulness of speech or conduct").

The statute at issue here - Okla. Stat. tit. 27, § 5 (2001) - does not fall into either category.  Instead, the law simply authorizes a municipality to take private property.  No conduct or speech is affected, and the vagueness doctrine is inapplicable.

The Tenth Circuit Court of Appeals addressed a similar issue in *Kinnell v. Graves*, 265 F.3d 1125 (10th Cir. 2001).  Federal law restricts pauper status for prisoners when they have already had three or more actions dismissed for frivolousness or failure to state a valid claim.[11]  In *Kinnell v. Graves*, the plaintiff claimed that the law was unduly vague because of the absence of direction about how long ago the prior dismissals could be counted.[12]  The federal appellate court rejected the claim, explaining that the vagueness doctrine was inapplicable because the law did not prohibit any conduct:

> "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  Section 1915(g) does not prohibit any conduct, and vagueness principles provide no basis for challenging it.[13]

The present vagueness challenge is invalid for the same reason.  Ambiguities in the eminent domain law could affect property-owners like the Defendants, just as vagueness in the pauper statute could impact prisoners.  But the laws governing eminent domain and pauper status restrict the power of the government rather than the conduct or speech of an

---

[11]     Prison Litigation Reform Act, 28 U.S.C. § 1915(g) (2000).

[12]     *See Kinnell v. Graves*, 265 F.3d at 1128.

[13]     *Kinnell v. Graves*, 265 F.3d at 1128 (citation omitted).

individual.  And as explained in *Kinnell v. Graves*, the vagueness doctrine does not apply in these circumstances.[14]

The Defendants rely on *Chicago v. Morales*, 527 U.S. 41 (1999), and *Giacco v. Pennsylvania*, 382 U.S. 399 (1966).  These decisions are inapplicable.

In *Morales*, the United States Supreme Court invalidated a statute which prohibited criminal gang members from "loitering," which was defined as "remain[ing] in any one place with no apparent purpose."[15]  The Court explained that the statute was vague because the phrase "no apparent purpose" did not provide adequate notice of the distinction between innocent and criminal conduct.[16]

In *Giacco*, the Supreme Court invalidated a statute which imposed costs on a defendant who had been acquitted on criminal charges.[17]  In that case, the statute provided that jurors "shall determine, by their verdict, whether . . . the defendant shall pay the costs."[18]

---

[14]     Like the Tenth Circuit Court of Appeals, federal appellate courts elsewhere have rejected vagueness challenges when the law restricts governmental power but does not prohibit individual conduct.  *See*, *e.g.*, *United States v. Brierton*, 165 F.3d 1133, 1139 (7th Cir. 1999) (rejecting a vagueness challenge to federal sentencing guidelines, as they limit the discretion of the sentencing judge but "do not establish the illegality of any conduct"); *Woodruff v. United States*, 954 F.2d 634, 642-43 (11th Cir. 1992) (*per curiam*) (holding that the void-for-vagueness doctrine did not apply to an interpretive rule that did not attempt to restrict conduct); *Nyeholt v. Secretary of Veterans Affairs*, 298 F.3d 1350, 1357 (Fed. Cir. 2002) (rejecting a vagueness challenge to a regulatory disability rating because it "does not purport to define what is lawful and unlawful conduct" or "relate to speech").

[15]     *Chicago v. Morales*, 527 U.S. at 60-63.

[16]     *Chicago v. Morales*, 527 U.S. at 57.

[17]     *Giacco v. Pennsylvania*, 382 U.S. 399, 403-405 (1966).

[18]     *Giacco v. Pennsylvania*, 382 U.S. at 400.

The state courts applied the law by authorizing assessment of costs when the defendant's conduct was lawful, but reprehensible, improper, or outrageous.[19]   The Supreme Court deemed the statute vague because it contained no standards for enforcement, leaving the jury with unlimited power in the imposition of costs.[20]

*Morales* and *Giacco* involved challenges to statutes which regulated conduct. Oklahoma's general eminent domain statute does not regulate conduct, and *Morales* and *Giacco* are inapplicable.[21]

Okla. Stat. tit. 27, § 5 (2001), does not restrict conduct or speech, and *Morales* and *Giacco* are inapplicable.

---

[19]      *Giacco v. Pennsylvania*, 382 U.S. at 403-404.

[20]      *Giacco v. Pennsylvania*, 382 U.S. at 400.

[21]      The Defendants rely on *Morales* for the proposition that a statute may be invalid "because of vagueness" if it lacks sufficient standards "to prevent arbitrary and discriminatory enforcement." Defendants' Supplemental Trial Brief at pp. 8-9 (Feb. 3, 2006).  As the Defendants acknowledge, however, the decision addressed the lack of standards to guide the police in determining whether to enforce criminal laws regulating individual conduct.  *See Chicago v. Morales*, 527 U.S. 41, 60 (1999) (holding that "[t]he broad sweep of the ordinance . . . violates 'the requirement that a legislature establish minimal guidelines to govern law enforcement'" (citation omitted)).

"Enforcement" of the law here is the province of the court, rather than law enforcement, and *Morales* is inapplicable.  For centuries, the courts have  resolved ambiguities in the law, and *Morales* does not suggest abandonment of this classic judicial function under the guise of the vagueness doctrine.  *See* Molot, *An Old Judicial Role for a New Litigation Era*, 113 Yale L.J. 27, 98 (2003) ("at the time of the Founding, people understood law to be ambiguous and interpretive leeway to be inevitable").

III.    <u>Harmlessness</u>

Even if a constitutional violation had taken place, it would have been harmless.[22]  The Defendants argue that Okla. Stat. tit. 27, § 5 (2001), improperly delegates legislative authority and is unduly vague.  But the taking was also authorized under Okla. Stat. tit. 11, §§ 22-104, 37-104, 37-105, 37-117, and 37-208 (2001), and the Defendants do not challenge the constitutionality of any of these provisions.

According to the Defendants, the Plaintiff had not previously relied on Title 11 of the Oklahoma Statutes.  This argument is invalid as a matter of law.  In the petition the city did not identify the statutory basis for the taking, as Oklahoma law requires only notice pleading.[23]  In its trial brief, the Plaintiff expressly invoked Okla. Stat. tit. 11, §§ 22-104, 37-104, 37-105, 37-117, and 37-208 (2001).[24]  The Defendants do not identify any pleading, prior to the trial brief, which would have called for identification of the statutory basis for the taking.  Under these circumstances, the Plaintiff did not waive reliance on Title 11 and the alleged invalidity of Okla. Stat. tit. 27, § 5 (2001), would have been harmless.

Finally, the Defendants contend that Title 11 does not authorize condemnation for economic development.  The Plaintiff does not claim that it does.  The City of Guymon has

---

[22]     *See Stoddard v. School District No. 1*, 590 F.2d 829, 834 (10th Cir. 1979) (holding that constitutional violations were harmless).

[23]     *See* Oklahoma Pleading Code, Okla. Stat. tit. 12, § 2008(A)(1) (2001).

[24]     Over six weeks later, the parties filed a joint pretrial conference report and the Defendants expressly challenged the constitutionality of Okla. Stat. tit. 27, § 5 (2001), but not the Title 11 sections relied upon by the Plaintiff.

argued that it needs the property to supply the citizenry with water and comply with environmental requirements.  The Court has already ruled that these purposes are expressly authorized by Okla.  Stat. tit. 11, §§ 22-104, 37-104, 37-105, 37-117, and 37-208 (2001).

<u>Other Claims</u>

In their exceptions, the Defendants also invoke:

- Okla. Stat. tit. 66, § 53 (2001)

- Okla. Const. art. 5, § 59

- Okla. Const. art. 2, § 2

In the Defendants' memorandum, however, these claims are not explained or supported with any factual argument.  The record does not suggest any reason to characterize the present taking as a violation of these provisions.

Title 66, Section 53 of the Oklahoma Statutes supplies a procedure for taking through eminent domain.  In the exceptions, the Defendants assert that the taking violates this provision.  But the Defendants supply no explanation and disregard the reference in their brief.  The Court overrules the exception under Okla. Stat. tit. 66, § 53 (2001).

The Court also rejects the exception involving Article 2, Section 2 of the Oklahoma Constitution.  This provision protects "life, liberty, the pursuit of happiness, and the enjoyment of the gains of [one's] own industry."[25]  Notwithstanding the breadth of the language, the rights in Article 2, Section 2 "are qualified" and "yield to the reasonable laws

---

[25]     Okla. Const. art. 2, § 2.

of society."[26]  The Defendants do not identify any argument for invalidity of the taking under Article 2, Section 2.

Article 5, Section 59 is also inapplicable.  This provision applies only if the legislature has enacted a "special law" rather than a "general law."[27]  The law would be considered a "special" one only if it distinguishes between similarly affected persons.[28]  The Defendants do not identify a "special law" or suggest any reason to believe that the taking violates Article 5, Section 59.  The reference to this provision is unexplained and unsupported.

As a result, the Court overrules the exceptions involving Okla. Stat. tit. 66, § 53 and the Oklahoma Constitution, art. 2, § 2 and art. 5, § 59.

Summary

The Defendants' remaining exceptions are overruled.  The municipality's exercise of its eminent domain power would not result in an equal protection violation, and Okla. Stat. 27, § 5 (2001) is neither unconstitutional nor the sole source of statutory authority for the taking.  The Defendants have not explained or supported their reliance on Okla. Stat. tit. 66, § 53 or the Oklahoma Constitution, art. 2, § 2 or art. 5, § 59.

---

[26]     *Edmondson v. Pearce*, 91 P.3d 605, 624 (Okla. 2004) (*per curiam*).

[27]     *See Grimes v. City*, 49 P.3d 719, 724 (Okla. 2002).

[28]     *See Grimes v. City*, 49 P.3d at 724.

So ordered this 4th day of May, 2006.

Robert E. Bacharach
United States Magistrate Judge