IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CITY OF GUYMON, A Municipal Corporation, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. CIV-04-457-BA<br>) |
| CAL FARLEY'S BOYS RANCH and CAL FARLEY'S BOYS RANCH FOUNDATION, | )<br>)<br>)<br>) |
| Defendants. | ) |

## **ORDER CONCERNING PLAINTIFF'S MOTIONS IN LIMINE**

The Plaintiff has moved to exclude evidence regarding:

- sales, appraisals, or valuations of comparable property taking place after November 4, 2005,

- the Plaintiff's intended use of the property,

- the private purpose for the taking,

- the necessity of the taking,

- the charitable nature of the Boys Ranch operations, and

- the location of Seaboard or its operations and usage of water and wastewater in Guymon.

The motion is granted in part, denied in part, and stipulated in part.

**Evidence Concerning Post-Taking Sales, Appraisals, or Valuations**

The City of Guymon seeks to exclude evidence concerning any sales, valuations, or appraisals of comparable property which occurred after the taking on November 4, 2005.[1] Plaintiff's Motion in Limine to Exclude Evidence of Post-Taking Sales (Sept. 15, 2006) (Doc. 162) ("Plaintiff's First Motion in Limine"). In particular, the Plaintiff seeks exclusion of evidence relating to the sale of "the Fields property," a comparable tract of land which the Defendants contend would be relevant to the fair market value of the condemned property. Defendants' Response to Plaintiff's Motions in Limine (Sept. 26, 2006) (Doc. 168) ("Defendants' Response").

The Plaintiff submits two arguments for exclusion of the evidence. First, the Plaintiff argues that as a matter of state law, evidence of comparable sales should be limited to transactions which occurred prior to the taking. Plaintiff's First Motion in Limine at pp. 3-4. Second, the City contends that public knowledge of the Guymon project had inflated the sale price of the Fields property, rendering the evidence unduly prejudicial to the determination of fair market value. *Id.* at. pp. 4-5. Both contentions lacks merit, and the Court overrules the motion in limine.

In part, the Plaintiff argues that the Oklahoma Court of Civil Appeals has recently held: "The best evidence of [fair market] value is like and comparable sales within a

---

[1] The date of taking is established when the amount of the Commissioners' award is deposited with the Court. *See State v. Post*, 125 P.3d 1183, 1187-89 (Okla. 2005). That date was November 4, 2005. *See* Order For Deposit of Funds (Nov. 4, 2005) (Doc. 72).

reasonable time *preceding* the condemnation." *Oklahoma Transportation Authority v. George Abdo Trust Dated 10-15-74*, 130 P.3d 751, 755 (Okla. Civ. App. 2005) (emphasis in original). This language is inapplicable here for two reasons:

- the issue of admissibility is governed by federal law, rather than state law, and
- admission of post-taking sales is not inadmissible *per se* under Oklahoma law.

The Defendants' first error is in their mistaken assumption that the issue of admissibility is governed by state law. "The admissibility of evidence in diversity cases in federal court is generally governed by federal law." *Blanke v. Alexander*, 152 F.3d 1224, 1231 (10th Cir. 1998) (citation omitted); *see also United States v. Featherston*, 325 F.2d 539, 542 (10th Cir. 1963) (holding in a condemnation action that "[a]dmissibility must be determined under federal law"). This principle is equally applicable in eminent domain cases. *See* 5 J. Sackman, *Nichols on Eminent Domain* § 18.01[2], at 18-6 (2006).[2]

In the Tenth Circuit, "comparability is a question of fact, and the court has a broad discretion in determining the admissibility of evidence of comparable sales." *United States v. 45,131.44 Acres of Land, More or Less, in El Paso, Fremont & Pueblo Counties, State of Colorado*, 483 F.2d 569, 571 (10th Cir. 1973). Although the Tenth Circuit Court of Appeals

---

[2]   This treatise stated:

> State condemnations may be tried in federal court under the diversity jurisdiction of the District Court. Fed. R. Civ. P. 71A(K). Then evidence would be governed by the Federal Evidence Code, while substantive issues such as the nature of "property" would continue to be controlled by the applicable state law.

5 J. Sackman, *Nichols on Eminent Domain* § 18.01[2], at 18-6 (2006) (citations omitted).

has not squarely addressed the issue, other federal courts have done so and have generally held that a comparable sale does not automatically become inadmissible when it takes place after the taking.[3] While the Tenth Circuit Court of Appeals has expressed a general preference for comparable sales taking place prior to the taking, the court has emphasized that the determination of market value is not limited to this type of evidence.[4]

The Defendants' second error is in their mistaken belief that Oklahoma law provides an automatic rule of exclusion for post-taking sales. On this issue, "there appears to be no Oklahoma case directly on point . . . ." *Oklahoma Transportation Authority v. George Abdo Trust Dated 10-15-74*, 130 P.3d 751, 754 (Okla. Civ. App. 2005); *see infra* pp. 6-7 (discussing *Oklahoma Transportation Authority v. George Abdo Trust Dated 10-15-74*). The Oklahoma Supreme Court has held that evidence involving the sale of a similar tract is admissible as a "comparable sale[]" if the transaction "was not so far removed in point of time from the appropriation . . . , and . . . was made in a free and open market." *State v. Aker*, 507 P.2d 1227, 1228 (Okla. 1973); *see Shulte v. Oklahoma City*, 494 P.2d 638, 642

---

[3]  *See United States v. 68.94 Acres of Land, More or Less, Situate in Kent County, State of Delaware*, 918 F.2d 389, 398 (3d Cir. 1990) ("The majority of circuit courts have rejected a *per se* rule in eminent domain proceedings prohibiting the introduction of evidence of post-taking comparable sales." (citations omitted)); *see also* 5 J. Sackman, *Nichols on Eminent Domain* § 18.16, at 18-112 (2006) ("the mere fact that a comparable sale occurs after the date of value does not render the sale inadmissible per se" (footnote omitted)).

[4]  The court stated: "The federal concept of market value is intimately related to selling price on the market, and it is generally recognized that the best evidence of market value is found in sales of comparable property within a reasonable time before taking; but the determination is not limited to that method." *United States v. Sowards*, 370 F.2d 87, 89 (10th Cir. 1966).

(1972) (upholding the trial court's admission of evidence of comparable sales that had occurred before and after the taking). The taking occurred November 4, 2005. *See supra* p. 2 & note 1. According to the Plaintiff, the sale price for the Fields property was determined one week later. Plaintiff's First Motion in Limine at p. 4. Under Oklahoma law, one week would not be considered "so far removed in point of time" to justify exclusion on this basis. *See supra* p. 4.

The Plaintiff also asserts that any sales taking place after November 4, 2005, "would be affected either positively or negatively by the City's announcement of its intent to condemn the land," relying on *United States v. Miller*, 317 U.S. 369 (1943) and *Oklahoma Transportation Authority v. George Abdo Trust Dated 10-15-74*, 130 P.3d 751 (Okla. Civ. App. 2005). Plaintiff's First Motion in Limine at pp. 4-5. These decisions are inapplicable, and the City's assertion is unsupported.

In *United States v. Miller*, the issue was whether a property owner should benefit from an increase in value from condemnation of adjacent lands. *See United States v. Miller*, 317 U.S. 369, 375 (1943). The Court held:

> If a distinct tract is condemned, in whole or in part, other lands in the neighborhood may increase in market value due to the proximity of the public improvement erected on the land taken. Should the Government, at a later date, determine to take these other lands, it must pay their market value as enhanced by this factor of proximity. If, however, the public project from the beginning included the taking of certain tracts but only one of them is taken in the first instance, the owner of the other tracts should not be allowed an increased value for his lands which are ultimately to be taken any more than the owner of the tract first condemned is entitled to be allowed an increased

      market value because adjacent lands not immediately taken increased in value due to the projected improvement.

*Id.* at 376-77.

These circumstances are absent, rendering *United States v. Miller* inapplicable. For example, there is no evidence that the Fields property was initially included in the scope of the City's waterworks project or that the project was enlarged to encompass that property. Thus, the Court rejects the Plaintiff's reliance on *United States v. Miller*.

The Plaintiff also relies on *Oklahoma Transportation Authority v. George Abdo Trust Dated 10-15-74*, 130 P.3d 751 (Okla. Civ. App. 2005). There the Oklahoma Transportation Authority ("OTA") condemned a tract for use in a turnpike project. *See Oklahoma Transportation Authority v. George Abdo Trust Dated 10-15-74*, 130 P. 3d at 752. In a trial to determine just compensation, the OTA sought to exclude evidence of a comparable sale, arguing that the sale price had been inflated as a result of the turnpike project. *See id.* at 752, 754. The trial court agreed and granted the motion in limine. *See id.* at 752. Citing Okla. Stat. tit. 27 § 13,[5] the Oklahoma Court of Civil Appeals affirmed and explained:

---

[5]    That statute provides in part:

> Before the initiation of negotiations for real property, an amount shall be established which is reasonably believed to be just compensation therefor and such amount shall be promptly offered for the property. In no event shall such amount be less than the approved appraisal of the fair market value of such real property. Any decrease or increase in the fair market value of real property prior to the date of valuation caused by the public improvement for which such property is acquired, or by the likelihood that the property would be acquired for such improvement, other than that due to physical deterioration within the reasonable control of the owner, will be disregarded in determining the compensation for the property.

> The policy set out by the Legislature governing the taking of private property clearly requires that any increase or decrease in the market value of the subject property that occurs prior to the taking must be disregarded if that increase or decrease is caused by the announcement of the public improvement project itself. Since such an increase in value must be disregarded if it occurs before the taking, it seems axiomatic to this court to conclude that any such increase in value that occurs after the taking must also be disregarded. Any other interpretation of this statute renders it a nullity. . . . These authorities clearly advise that the trial court's denial of admission of the Neel sale into evidence was eminently correct, and we therefore find no error was committed.

*Id.* at 755-56.

In *George Abdo Trust*, the critical issue was whether the sale price of the comparable property had been influenced by the turnpike project. *See id.* at 753-57. But the Plaintiff presents no evidence to indicate that the Guymon project had influenced the sale of the Fields property. Defendants' Response at pp. 4-5. This omission is fatal to the Plaintiff's reliance on *George Abdo Trust*.

As a result, the Plaintiff's theory of inadmissibility is based on an unsupported factual assumption and is denied.[6]

### **Evidence Concerning the Plaintiff's Specific Use of the Property**

The Plaintiff seeks to exclude evidence concerning the City's intended use for the property as a municipal waterworks and wastewater facility. Plaintiff's Motion in Limine to Exclude Evidence of the Value of the Property Based on the Intended Use (Sept. 15, 2006)

---

Okla. Stat. tit. 27 §13(3) (2001).

[6] The Court denies the motion without prejudice to its renewal at trial. At trial, through voir dire of a witness or otherwise, the Plaintiff will have an opportunity to submit the missing evidence prior to admission of evidence involving the sale of the Fields property.

(Doc. 164) ("Plaintiff's Second Motion in Limine"). In response and in their in limine motion, the Defendants urge admission of the evidence with respect to the property's highest and best use as a municipal or industrial water supply. Defendants' Response at pp. 5-8; Defendants' Motions in Limine and Brief in Support at pp. 14-15 (Sept. 15, 2006) (Doc. 166) ("Defendants' Motions in Limine"). But the Defendants also seek to exclude "any reference to the [sic] Guymon's intentions or expectation that it will use the property for any purpose . . . ." Defendants' Motions in Limine at p. 14.

The parties have presented dual motions in limine to exclude evidence relating to the Plaintiff's intended purpose for the property. As a result, the Court interprets the dual motions as a stipulation to exclude this evidence.[7]

### **Evidence Concerning the Necessity and Nature of the Taking**

The Plaintiff seeks to exclude evidence regarding the public or private nature of the taking and the necessity of the condemnation. Plaintiff's Third Motion in Limine and Brief in Support at pp. 2-3 (Sept. 15, 2006) (Doc. 165) ("Plaintiff's Third Motion in Limine"). In response, the Defendants state: "Because private use and necessity are not relevant to the issues to be tried to the jury, Defendants have no intention of addressing those issues." Defendants' Response at p. 9. Based on the Defendants' concession, the Court construes the parties' statements as a stipulation to exclude evidence relating to private use and necessity.

---

[7]    This ruling would not extend to evidence relating to the highest and best use of the property as a source of water for municipalities or businesses. *See Olson v. United States*, 292 U.S. 246, 255 (1934) (the highest and best use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered in determining fair market value).

**Evidence Concerning the Charitable Work of the Boys Ranch**

The Plaintiff seeks to exclude evidence concerning the charitable nature of the work done by the Boys Ranch as irrelevant to the fair market value of the land. Plaintiff's Third Motion in Limine at pp. 3-4. The Court grants the motion in limine.

"[F]air market value" is "the amount of money which a purchaser willing but not obliged to buy the property would pay to an owner willing but not obliged to sell it, taking into consideration all uses to which the land was adapted and might in reason be applied." *City v. Creekmore*, 29 P.2d 101, 103-104 (Okla. 1934). The determination of fair market value involves:

- factors which a reasonably prudent buyer would consider before purchasing the property,[8] and

- the highest and best use for which the property is adaptable and needed or likely to be needed in the reasonably near future.[9]

The Defendants argue:

Specifically, assets of the Boys Ranch are managed by an experienced team of executives who are knowledgeable about real estate management. These experienced executives report to a board of directors who take the organization's mission very seriously. These facts are relevant to the use and value of the property because it appears that Guymon will argue that the property has been used for agricultural purposes for the past twenty years because there is no other use for which the property is suited. This assertion is simply untrue.

Defendants' Response at p. 9.

---

[8] *See Western Farmers Electric Co-op. v. Enis*, 993 P.2d 787, 792 (Okla. Civ. App. 1999).

[9] *See Olson v. United States*, 292 U.S. 246, 255 (1934).

The Defendants state that through their management, the property has become a valuable water resource which has enhanced the property's value. *Id.* at p. 10. The value of the property as a water resource and its use by the Defendants are arguably relevant to the property's fair market value. But the charitable nature of the Defendants' organization is not relevant to the issue of just compensation.[10] *See Ostrowski v. Cape Transit Corp.*, 853 A.2d 985, 995-96 (N.J. Super. Ct. App. Div. 2004) (holding that on a timely objection, the trial court should have excluded testimony concerning the plaintiff's participation in charitable activities because the probative value of the evidence had been substantially outweighed by its prejudicial impact). Accordingly, the Plaintiff's motion is granted.

## Evidence Concerning Seaboard

The Plaintiff seeks to exclude evidence concerning Seaboard and its location and operation as irrelevant to the fair market value of the condemned land. Plaintiff's Third Motion in Limine at p. 4. The motion is denied.

As argued by the Plaintiff,[11] the Court has previously determined that the taking was for a public purpose.[12] Thus, any evidence that the taking is for the use and benefit of Seaboard is excluded, as that issue has already been decided.[13] However, the Defendants can

---

[10]   This ruling may be revisited if the Plaintiff "opens the door" to such evidence.

[11]   Plaintiff's Third Motion in Limine at p. 4.

[12]   Order (December 30, 2005) (Doc. 114).

[13]   As noted above, the Defendants acknowledge the irrelevance of evidence involving private use. *See supra* p. 8.

present evidence of Seaboard's location and operation to the extent that such evidence relates to the property's highest and best use. *See supra* p. 9 (discussion of evidence relating to highest and best use as an element of fair market value).

"Highest and best use contemplates a present existing use or one reasonably likely to take place in the near future, whereby availability of this future use would have affected the market price." *United States v. 46,672.96 Acres of Land, More or Less, Situate in Dona Ana, et al., Counties, State of New Mexico*, 521 F.2d 13, 15-16 (10th Cir. 1975) (citations omitted).

According to the Defendants, the property's highest and best use would involve a municipal or industrial water supply. Defendants' Response at pp. 5-8, 10. The Defendants are entitled to present evidence in support of this theory, and Seaboard's water needs and proximity to the condemned property could bear on the highest and best use as an industrial water source. *See State v. Arnold*, 341 P.2d 1089, 1094 (Ore.) (proximity of a highway to the condemned property, a cinder cone useful for surfacing of roads, "would be a relevant factor in assessing the cone's value because the cost of transportation to the purchaser would be an ingredient in fixing the price of the cinders removed from the cone"), *modified on other grounds*, *State v. Arnold*, 343 P.2d 1113 (Ore. 1959); *Commonwealth v. Rollyson*, 415 S.W.2d 838, 839 (Ky. Ct. App. 1967) (proximity of a new highway was relevant to fair market value with respect to the possibility of development of the condemned property for commercial or residential use).

The Plaintiff's argument on relevance is self-defeating. The City elsewhere argues that it is the only municipality that can use the property for water supply because other towns would need to pipe the water "for miles." Plaintiff's Second Motion in Limine at pp. 2-4. To rebut this argument, the Defendants seek to show the viability of the property as an industrial water source because of the proximity to Seaboard. If the City can point to the distance for some potential buyers, the Defendants can point to the proximity for others. As a result, the Court rejects the Plaintiff's sweeping effort to exclude any evidence regarding Seaboard.

## **Conclusion**

The Court grants the Plaintiff's motions to exclude evidence regarding the charitable nature of the Boys Ranch operations. The Court denies the Plaintiff's motions to exclude evidence regarding:

- post-taking sales, and
- Seaboard.

The Court deems the motions on the following issues moot based on the parties' stipulations:

- whether the taking is for a private use,
- the necessity of the taking, and
- the Plaintiff's intended use of the property.

SO ORDERED this 19th day of October, 2006.

_____
Robert E. Bacharach
United States Magistrate Judge